UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Deqa M. Y.,

    Petitioner,

v.

William P. Barr,
*U.S. Att'y General*;
Chad Walf,
*Acting Sec'y,
Department of Homeland Security*;
Matthew Albence,
*Acting Director,
Immigration and Customs Enforcement*;
Peter Berg,
*Director, St. Paul Field Office,
Immigration and Customs Enforcement*;
Eric Holien,
*Sheriff, Kandiyohi County*

    Respondents.[1]

No. 20-cv-1091 (ECT/DTS)

**REPORT AND RECOMMENDATION & ORDER**

---

Mary Georgevich, Immigrant Law Center of Minnesota, 450 N. Syndicate Street, Suite 200, Saint Paul, Minnesota 55104; Sara Halimah, Kathy Moccio, Benjamin Casper Sanchez, and Nadia Anguiano-Wehde, James H. Binger Center for New Americans, University of Minnesota Law School, 229 19th Avenue South, Minneapolis, Minnesota 55455; John Bruning, The Advocates for Human Rights, 330 Second Avenue South, Suite 800, Minneapolis, Minnesota 55401; Michael D. Reif and Rajin S. Olson, Robins Kaplan

---

[1] Citing the Supreme Court's opinion in *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), Respondents argue in a footnote that Peter Berg, as Director of the St. Paul Field Office, is the only proper respondent. Resp. to Pet. 1 n.1, Dkt. No. 15. The Court has encountered this same perfunctory argument in other ICE habeas petitions and remains unpersuaded. The *Padilla* Court held that the warden, rather than "the Attorney General or some other remote supervisory official[,]" is the appropriate respondent to "core challenges" to confinement brought by prisoners. *Padilla*, 542 U.S. at 435-36. But the Court expressly declined to extend its holding to ICE habeas cases. *Id.* at 435 n.8. This Court would prefer not to see Respondents' footnote in future cases, unless it includes an actual argument.

LLP, 2800 LaSalle Plaza, 800 LaSalle Avenue, Minneapolis, Minnesota 55402; for Petitioner.

Ana H. Voss and Ann M. Bildtsen, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Respondents.

## INTRODUCTION

Petitioner Deqa M. Y. has been in the custody of Immigration and Customs Enforcement under an administratively final order of removal since July 10, 2019. She argues her prolonged detention, now over eleven months, violates her rights under the Due Process Clause of the Fifth Amendment and the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and so seeks a Writ of Habeas Corpus compelling her release. About a week after filing her Petition, Deqa also filed an "Emergency Motion for Immediate Release Due to Extraordinary Circumstances," citing the current COVID-19 pandemic and her health as creating extraordinary circumstances warranting immediate release while the Court considers her Petition. Dkt. No. 5.

Based upon the parties' submissions, which did not appear incomplete or inadequate, this Court issued a Report and Recommendation on June 2, 2020. Because Respondents failed to rebut Deqa's showing that Somalia's moratorium on international flights made her removal unlikely in the reasonably foreseeable future, the Court recommended granting Deqa's Petition and denying her Emergency Motion as moot. On June 9, 2020, the Respondents filed an objection to the R&R and included a supplemental declaration from an ICE deportation officer. These new facts bear directly on the Court's analysis, so the Court vacated its prior R&R.

Presumably, the Court now has a full record and can make a recommendation based upon all relevant facts, as opposed to the partial record Respondents initially

2

provided. Although Deqa has now been in civil custody for 11 months, the complete record demonstrates her removal is likely in the reasonably foreseeable future and so her continued detention remains lawful.

### FINDINGS OF FACT

Deqa is a 31-year-old native and citizen of Somalia who arrived in the United States as a refugee in 1998. Pet. Ex. N (Decl. of Pet'r), at ¶ 1, Dkt. No. 1; Decl. of William J. Robinson Ex. 1, at p. 1 (date of birth), Dkt. No. 16.[2] Since arriving in 1998, Deqa has not gained U.S. citizenship or obtained lawful permanent resident status. Robinson Decl. Ex. 1, at 6. In late 2012, Deqa pleaded guilty to second degree unintentional murder and was sentenced to 128 months incarceration. *Id.* at 18-21, 28. Shortly after Deqa began her sentence at the Minnesota Correctional Facility in Shakopee, Minnesota, ICE agents served Deqa with a Notice to Appear, charging that she was removable based upon her criminal conviction. *Id.* at 1-2.

Deqa's removal proceedings continued in earnest through the early months of 2018, while she remained incarcerated and appeared *pro se.* Pet. Ex. A, at 2; Pet. Ex. L, at ¶ 3; Robinson Decl. ¶ 7. In March 2018, an Immigration Judge ordered Deqa be removed to Somalia. Robinson Decl. Ex. 1, at 32-33. At that time, Deqa waived her right to appeal the IJ's decision. *Id.*; Pet. Ex. E (*Pro Se* Mot. To Reopen Hr'g), at 3. However, in January 2019, she wrote a *pro se* letter to the Immigration Court, Pet. Ex. E, which interpreted her letter as a motion to reopen the hearing and denied it. *Id.*; Pet. Ex. A (Mem.

---

[2] Exhibit 1, the only exhibit to Robinson's declaration, contains several individually-paginated documents. Any citation is to the pagination found in the bottom-right corner, which runs consistently through the exhibit.

3

and Order of the IJ, Mar. 5, 2019). Deqa appealed this decision to the Board of Immigration Appeals, Pet. Ex. F., which affirmed the IJ's denial. Pet. Ex. I.

On July 10, 2019, the Minnesota Department of Corrections released Deqa, but ICE agents immediately arrested her. Pet. Ex. G; Pet. Ex. N, at ¶ 2; Robinson Decl. ¶ 11.[3] Since July 10, 2019, Deqa has been in civil custody, first at Sherburne County and then at Kandiyohi County Jail. Pet. Ex. N, at ¶ 2. In early October 2019, ICE conducted a 90-day review and informed Deqa that she would remain in custody because ICE had sent a travel document request and viewed removal as "likely in the reasonably foreseeable future." Pet. Ex. J., at 1.

In early November 2019, a little less than four months after it sent a request, ICE received the necessary travel document from the Embassy of Somalia. Robinson Decl. ¶¶ 12, 16. Shortly thereafter, ICE transferred Deqa to Louisiana, where she was scheduled to be on a December 5, 2019 charter flight to Somalia. *Id.* at ¶ 17. However, Deqa, now represented, filed both a second Motion to Reopen and an Emergency Motion to Stay Removal with the BIA. Pet. Ex. K; Pet. Ex. L, at ¶ 2. The BIA granted the stay of removal pending its consideration of the Motion to Reopen. Pet. Ex. B. ICE returned Deqa to Minnesota. Robinson Decl. ¶ 19.

Since the BIA granted emergency stay of removal, Deqa has remained in ICE custody. In that time, ICE has twice reviewed Deqa's custody status—a "180 day review" and a "270 day review"—and determined it "ha[d] reason to believe there is a significant likelihood that [Deqa's] removal will occur in the reasonably foreseeable future." Pet. Ex.

---

[3] Officer Robinson states Deqa was released from MCF-Faribault. Robinson Decl. ¶¶ 7, 11. That is directly contradicted by the gate pass from MCF-Shakopee attached to Deqa's Petition, Pet. Ex. G, the authenticity of which the Respondents do not challenge.

4

M (Decision to Continue Detention, Apr. 9, 2020); Robinson Decl. ¶¶ 20-21. On May 28, 2020, the BIA denied Deqa's Motion to Reopen, Suppl. Decl. of Deportation Officer William J. Robinson ¶ 4, Dkt. No. 27, and so Deqa's removal is no longer subject to the administrative stay.

Deqa's travel document also expired May 1, 2020. Robinson Decl. ¶ 23. Although ICE has applied for and expects to receive a renewal, *see id.*, the Government does not say when that renewal request was made or how long such requests typically take to process. In his supplemental declaration, Officer Robinson states only that the travel document is still "currently being renewed." Robinson Suppl. Decl. ¶ 5.

Deqa's removability has also been subject to forces outside either her or ICE's control. In response to the COVID-19 pandemic, the Federal Government of Somalia suspended international flights, with humanitarian and cargo exceptions, for 15 days on March 18, 2020. *COVID-19 Information*, U.S. Embassy in Somalia, https://so.usembassy.gov/covid-19-information/ ("June 9, 2020 Update"). The Government of Somalia extended the suspension for another 30 days on April 6, 2020. *Id.* When it prepared the now-vacated R&R, this Court reviewed information provided by the U.S. Embassy in Somalia on its website, a web page both parties cited. As recently as May 28, the Embassy did not say the travel suspension has been lifted, but rather warned United States citizens in Somalia that failure to secure a seat on one of two special charter flights leaving Mogadishu on May 28 "is, for all intents and purposes, a decision to shelter in place for the duration of the COVID-19 pandemic." *Id.* ("May 28, 2020 Update").

Since then, however, that stark warning has disappeared from the Embassy's website. *Id.* ("June 9, 2020 Update"). The Embassy still does not say the suspension of international passenger flights has been lifted, but that travelers should "[c]heck with your airlines or travel operator regarding any updated information about your travel plans and/or restrictions." *Id.* Officer Robinson states in his supplemental declaration that "ICE Removal & International Operations (HQ/RIO) reports that the Embassy of Somalia has started issuing travel documents again, additional travel document requests are being submitted, and a chartered removal is in the planning process for September 2020." Robinson Suppl. Decl. ¶ 6. According to Officer Robinson, ICE will first attempt to remove Deqa via commercial flight, but expects her removal no later than September, as part of the still-in-the-works charter flight.[4] *Id.* at ¶ 7.

## CONCLUSIONS OF LAW

ICE has held Deqa in civil custody under a final order of removal for over eleven months. A detention of such length is not inherently unlawful, as Respondents repeat time and again throughout their Response. It is also beside the point, as the present length of Deqa's civil detention bears only tangentially on the standard this Court must address. On the record now before the Court, it appears Deqa's removal is significantly likely to occur in the reasonably foreseeable future. As such, both her Petition and Emergency Motion should be denied.

---

[4] Officer Robinson previously stated he expected Deqa's removal to occur within sixty days of the administrative stay being lifted. Robinson Decl. ¶ 23.

## I. Legal Standards

### A. Scope of review

Although federal district court review of removal proceedings is limited, this Court retains jurisdiction to consider statutory and constitutional challenges to the Government's detention of an alien. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"); *see also Moallin v. Cangemi*, 427 F. Supp. 2d 908, 919-21 (D. Minn. 2006) (explaining that certain 2005 amendments do not alter district court jurisdiction over § 2241 petitions not attacking the underlying removal order). Deqa's Petition challenges her continued civil detention, not her removability, and so falls squarely within this Court's limited jurisdiction.

### B. Post-final-order detention and *Zadvydas*

ICE's statutory authority to detain Deqa flows from 8 U.S.C. § 1231, the post-final-order-of-removal statutory provision. While Deqa was still in state custody for her criminal conviction, an IJ ordered her removed to Somalia, Robinson Decl. Ex. 1, at 32-33, an order which became administratively final the same day because Deqa waived appeal, 8 C.F.R. § 1241.1(b). Neither her filing motions with the BIA nor the BIA's grant of a stay altered the finality of the removal order, so her entire detention has been under § 1231. *See Raffington v. I.N.S.*, 340 F.3d 720, 724 (8th Cir. 2003) ("When the time to seek review of a deportation order has expired, a subsequent motion to reopen or reconsider, even if timely, does not affect the finality of the deportation order."); *see also* 8 U.S.C. § 1231(a)(1)(B) (listing only three triggering events beginning the removal period).

Once an individual "is ordered removed," § 1231 gives the government 90 days to remove that person. 8 U.S.C. § 1231(a)(1)(A)-(B). During that 90-day removal period, the government "shall detain the alien." *Id.* at (a)(2). If an alien is removable for committing a crime, the Government may detain the alien beyond 90 days. *Id.* at (a)(6). Although the IJ's order in this case became administratively final in March 2018, the 90-day removal period did not begin to run until ICE took Deqa into custody on July 10, 2019. *See id.* at (a)(1)(B)(iii).

Despite the statutory language granting the government (through the Attorney General) the discretion to detain certain individuals after the 90-day removal period expires, the Supreme Court has stated that post-final-order detention is only presumptively reasonable for six months under § 1231. *Zadvydas*, 533 U.S. at 699-701. A potentially indefinite civil detention, as § 1231 seemingly authorizes, would run afoul of the Fifth Amendment's Due Process Clause. *Id.* at 690-92. Because detention of individuals subject to removal proceedings is civil rather than criminal, the detention must have a non-punitive purpose. *Id.* at 690. Where the detention is potentially indefinite, it "no longer bears a reasonable relation to the purpose for which the individual was committed." *Id.* (cleaned up). Noting the ambiguity of the word "may" used to grant the Attorney General the authority to extend detention, the Supreme Court avoided these constitutional invalidation concerns and read into the statute itself a limiting principle: "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. After a six-month window of presumptively reasonable

8

detention, inclusive of the 90-day removal period, continued detention is not authorized if removal is not reasonably foreseeable.[5] *Id.* at 700-01.

Under the *Zadvydas* framework, once an individual has been detained under a final order of removal for over six months, she may provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," which the government must then rebut. *Id.* at 701. If removal is not reasonably foreseeable, then the civil detention no longer serves its legitimate, non-punitive purpose and the individual must be released. *Id.* at 690-91, 699-700. The longer an individual has been in post-removal custody, what counts as the "reasonably foreseeable future" necessarily grows shorter. *Id.* at 701.

## II.     Deqa's Detention

In her Petition, Deqa identifies two institutional barriers obstructing her removal: (1) the BIA's stay of removal and (2) Somalia's suspension of international flights, apparently indefinitely, in response to the COVID-19 pandemic. The BIA's denial of her Motion to Reopen renders this first impediment moot. As to Somalia's flight moratorium, Deqa makes a sufficient showing to meet her burden, but Respondents have rebutted.

### A.     Deqa has met her burden

Deqa has met her initial burden by providing good reason to believe there is no significant likelihood of her removal in the reasonably foreseeable future. Courts have found no significant likelihood of removal "where political conditions in the country of origin render removal virtually impossible[.]" *Ahmed v. Brott*, 2015 WL 1542131, at *4 (D. Minn.

---

[5] In the 19 years since *Zadvydas* was decided, Congress could have rendered the decision a dead letter through statutory amendment but has declined to do so.

Mar. 17, 2015). As recently as May 28, after Deqa filed her Petition, the United States Embassy in Somalia warned that a decision to pass on a charter flight for U.S. citizens leaving Mogadishu that day "**is, for all intents and purposes, a decision to shelter in place for the duration of the COVID-19 pandemic. There is no guarantee that future flights will be available.**" *COVID-19 Information*, U.S. Embassy in Somalia, https://so.usembassy.gov/covid-19-information/ (updated May 28, 2020) (emphasis original). This admonition by the U.S. Embassy is clear evidence that Deqa's removal to Somalia is not likely in the reasonably foreseeable future.

Respondents initially argued, and apparently still take the position, that Deqa raised a red herring because, at the time she filed her Petition, ICE was not attempting to remove her. Only after the BIA decided the motion could the matter be ripe for consideration, they argued, because the Court could not know what Somalia's travel policies would then be. Respondents' failure to cite any authority suggests this is not a serious position. Nor do Respondents offer any rationale for adopting such a rule. As previously discussed, nothing about the BIA stay changed the finality of Deqa's removal order. If a petitioner shows an impediment renders her removal not significantly likely in the reasonably foreseeable future, then continued detention is no longer authorized by statute, irrespective of other co-extensive impediments. It is entirely unclear why Respondents think this Court could not consider the effect of Somalia's policies until after the BIA decision, other than that such a rule would be convenient for Respondents. But this Court must make its decisions based upon the law and the facts, not what the parties may deem expedient. On that standard, Deqa has satisfied her burden.

**B.     Respondents have rebutted**

Although Deqa has made a sufficient showing that her removal is not significantly likely to occur in the reasonably foreseeable future, Respondents have now rebutted that showing with their supplemental declaration. That rebuttal, however, is not without its limitations.

**1.     Rebuttal on the original record**

To start, Respondents point to the original Declaration of Officer Robinson to show the diligent efforts made to remove Deqa, including obtaining the initial travel document and scheduling her for the December 2019 charter flight. But for her emergency motion to stay removal, ICE would almost certainly have already removed Deqa from the United States. But Deqa had a right to file that motion. And the question here is not whether government foot-dragging in the past shows she is unlikely to be removed in the foreseeable future, but rather whether Somalia's flight moratorium made her removal unlikely.

Respondents also make two arguments that relate to ICE's administrative custody review process. First, they argue Deqa, who has received three 90-day custody reviews, never presented her case to ICE during those reviews. This is an actual red herring, as Deqa did not need to exhaust her *Zadvydas* claim in an administrative process before bringing a habeas petition.

Respondents' second argument is more interesting but ultimately fails. They argue the regulations governing post-final order custody reviews "are reasonable interpretations of the Immigration and Nationality Act ('INA'), do not conflict with the INA, and implement appropriate procedural requirements regarding the post-order custody review process"

and should be accorded deference. Response 10 n.4. Because ICE, applying these regulations, has concluded Deqa's removal is significantly likely in the reasonably foreseeable future, this Court should defer and conclude the same. *Id.* at 14-16. Respondents rely on a Tenth Circuit opinion, *Hernandez-Carrera v. Carlson*, 547 F.3d 1237 (10th Cir. 2008), which applied the Supreme Court's decision in *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005) and concluded that the same regulations at issue here, promulgated after *Zadvydas*, were a valid agency interpretation of an ambiguous statute.

There may be several reasons to quibble with the Tenth Circuit's analysis in *Hernandez-Carrera*, but this Court need not explore those to address the Petition here. At bottom, Respondents are not actually asking this Court to defer to a regulatory interpretation of § 1231. Instead, they ask this Court to defer to a factual finding by an agency that Deqa's removal is significantly likely in the reasonably foreseeable future, and so conclude Respondents have rebutted Deqa's showing. This distinguishes the present case from *Hernandez-Carrera*, where petitioners directly challenged a provision of the regulations allowing for their continued detention because ICE found they "pose a special danger to the public." *Hernadez-Carrera*, 547 F.3d at 1243. Neither *Brand X* nor *Hernandez-Carrera* can be read to support the broad assertion that this Court must defer to an agency's fact-finding because the underling statute is ambiguous. Further, the only record of these reviews, the letters sent to Deqa, are wholly conclusory, make no mention of Somalia's current travel suspension, and provide no other basis for reaching the same conclusion as ICE. *See* Pet. Ex. J, Ex. M; Robinson Decl. Ex. 1, at 34. On the original

record and arguments, Respondents failed to rebut Deqa's showing that she is not significantly likely to be removed in the reasonably foreseeable future.

### 2. Rebuttal on the supplemented record

In the normal course, this Court's recommendation would end here. But, as part of their objection to the first R&R, Respondents submitted a second declaration from Deportation Officer Robinson. It contains information not previously disclosed that bears directly on the disposition of Deqa's Petition and so should properly be considered as part of this Court's recommendation to the District Court.

Officer Robinson now declares that ICE "reports that the Embassy of Somalia has started issuing travel documents again, additional travel documents requests are being submitted, and a chartered removal is in the planning process for September 2020." Robinson Suppl. Decl. ¶ 6. The clear implication is that the Court can reasonably expect ICE to remove Deqa no later than the end of September. Although Officer Robinson does not state that Somalia has ended its general moratorium on international flights, it is sufficient that Somalia appears willing to continue working with the United States to repatriate Somalian nationals despite any generally applicable suspension of air travel. In this Court's view, Officer Robinson's statement, with the reasonable inferences drawn from it, rebuts Deqa's showing. As such, Deqa's removal is significantly likely to occur in the reasonably foreseeable future.

That said, Officer Robinson's word choice, coupled with the course Respondents have taken in answering this Petition, cast a cloud over the record this Court cannot completely ignore. Respondents' initial answer, including Officer Robinson's first declaration, provided no information regarding the impact of Somalia's flight moratorium.

This was so despite an order that their response should include "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of [Deqa's] incarceration, in light of the issues raised in the petition[.]" Order, May 7, 2020, Dkt. No. 4. Respondents' failure to include any sort of factual response initially is troubling, as such information seems to be uniquely in Respondents' possession. They clearly knew Deqa raised the travel issue in her Petition, as they addressed her argument, but only by characterizing it as a red herring. To the extent Respondents did not provide information because they thought it unnecessary, that decision was directly contrary to this Court's clear order.

A closer reading of Officer Robinson's supplemental declaration suggests a more troubling reason why no information was originally provided. He says Somalia "has *started* issuing travel documents *again*[.]" Robinson Suppl. Decl. ¶ 6 (emphasis supplied). This suggests Somalia was in fact not working with the United States to repatriate Somalian nationals, at least at some recent point in time. If so, Respondents' initial answer makes more sense: they wished to evade the issue completely, and by happy coincidence received an update before their objection to the Court's R&R was due. Again, this raises serious concerns about Respondents' candor. A habeas petition—one where an individual has been in civil custody for almost a year—is no place to play hide-the-ball. Given the events to date, the Court is skeptical the September charter flight will in fact occur. Officer Robinson says a charter "is in the planning process," but he does not say how far along those plans are or even if the Somalian government is part of the planning process.

So, although the Court ultimately credits Officer Robinson's supplemental declaration, it does not do so blindly. To ensure that Deqa's removal is significantly likely to occur no later than September 2020, the Court will require Respondents to provide an update on Deqa's removal and the planned September charter flight on or before August 3, 2020. If Respondents learn of new information at any other time that materially affects Deqa's probability of removal by the end of September, it must also update the Court with that information.

**III.   The Emergency Motion**

Because this Court recommends denying Deqa's habeas Petition, it also recommends denying her Emergency Motion. Under the Federal Magistrates Act, a magistrate judge in a civil action may "hear and determine any pretrial matter . . . except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to [certify a class action], to dismiss for failure to state a claim upon which relief may be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1). Although Deqa does not label her motion as one for preliminary injunctive relief, it is precisely that: she seeks the same relief she would be entitled to—and which this Court recommends she receive—on the merits of her Petition. It also does not matter that the Eighth Circuit has referred to the relief she requests as "bail pending disposition of the habeas petition[.]" *Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986). The authority of this Court to issue orders regarding the "release or detention of persons pending trial" is expressly circumscribed to those orders issued under 18 U.S. § 3142 in criminal matters. 28 U.S.C. § 636(a)(2). Although the Eighth Circuit adopted language from the criminal context, a habeas proceeding is civil in nature, *see, e.g.*, *Mayle v. Felix*, 545 U.S. 644, 654-55

15

(2005), and the closest analogue to bail in the civil context is a preliminary injunction. So, this Court lacks the authority to dispose of Deqa's Emergency Motion by order and can only address it by recommendation.

This Court's conclusion that it can only offer a recommendation on Deqa's Emergency Motion creates possible pitfalls. The District Court may modify, or even decline to accept, this R&R. If it does, then any recommendation conditioned upon an unadopted finding or conclusion falls. But the Court was referred two dispositive motions and asked to provide its best-reasoned recommendation. Here, the most prudential path is to cut to the Petition, which this Court recommends be denied, and so deny the Emergency Motion as moot.[6]

## RECOMMENDATION

Based upon the foregoing, the Court RECOMMENDS THAT:

1. Petitioner Deqa M. Y.'s Petition for Writ of Habeas Corpus [Dkt. No. 1] be DENIED.
2. Petitioner's Emergency Motion for Immediate Relief Due to Extraordinary Circumstances [Dkt. No. 5] be DENIED as moot.

---

[6] Even if it reached the merits of Deqa's Emergency Motion, this Court is skeptical she would succeed. The Eighth Circuit requires a petitioner seeking bail to show "the existence of some circumstances making the request exceptional and deserving of special treatment in the interests of justice." *Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986). Here, Deqa points to the present COVID-19 pandemic and argues she is at a heightened risk because her BMI qualifies her as obese. But it is far from clear that these concerns are sufficiently particularized to Deqa such that her request is exceptional and deserving of special treatment.

## ORDER

It is HEREBY ORDERED THAT:

1. On or before August 3, 2020, Respondents shall provide, in the form of a sworn affidavit or declaration, an update on Deqa's removal, including the status of the September 2020 charter flight currently in the planning process.

2. If Respondents learn of new information at any other time that materially affects the probability that Deqa will be removed by the end of September 2020, they must promptly bring such information to the Court's attention by affidavit or declaration.

Dated: June 15, 2020

                                                s/David T. Schultz
                                                DAVID T. SCHULTZ
                                                United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). **All objections and responses must comply with the word or line limits set for in LR 72.2(c).**