UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Deqa M. Y., | File No. 20-cv-1091 (ECT/DTS) |
| Petitioner, | |
| v. | **OPINION AND ORDER** |
| William Barr, *U.S. Attorney General*; Chad Wolf, *Acting Secretary, Department of Homeland Security*; Matthew Albence, *Acting Director, Immigration and Customs Enforcement*; Peter Berg, *Director, St. Paul Field Office, Immigration and Customs Enforcement*; and Eric Holien, *Sheriff, Kandiyohi County*; | |
| Respondents. | |

---

Benjamin Casper Sanchez, Kathleen A. Moccio, and Nadia Anguiano-Wehde, James H. Binger Center for New Americans, University of Minnesota Law School, Minneapolis, MN; John R. Bruning, The Advocates for Human Rights, Minneapolis, MN; Mary Georgevich, Immigrant Law Center of Minnesota, Saint Paul, MN; Michael D. Reif and Rajin Olson, Robins Kaplan LLP, Minneapolis, MN; for Petitioner.

Ana H. Voss and Ann M. Bildtsen, United States Attorney's Office, Minneapolis, MN, for Respondents.

---

Petitioner Deqa M. Y. brought a habeas action under 28 U.S.C. § 2241 challenging her continued post-removal-order detention by the Government. ECF No. 1. Deqa also filed an emergency motion for immediate release while her Petition is pending based on the ongoing COVID-19 pandemic and health conditions she believes put her at greater risk of suffering severe complications if she were to contract the virus while in the Government's custody. ECF No. 5. Deqa has been detained since July 10, 2019—over one year at this

point.  Pet. ¶ 1.  She is being held pursuant to 8 U.S.C. § 1231(a)(6), the statute that authorizes the detention of certain "criminal aliens" beyond an initial 90-day removal period after an order of removal becomes administratively final.  Deqa contends that her ongoing confinement violates § 1231(a)(6) and the Due Process Clause of the Fifth Amendment.  *Id.* ¶ 2.  Magistrate Judge David Schultz issued a Report and Recommendation ("R&R") recommending that Deqa's petition be denied because "Deqa's removal is significantly likely to occur in the reasonably foreseeable future."  ECF No. 30 at 13, 16.  Magistrate Judge Schultz also recommends denying Deqa's emergency motion for immediate release as moot.  *Id.* at 16.  Deqa objected to the R&R, arguing that the Government failed to rebut her evidence that her removal is not likely to occur in the reasonably foreseeable future.  ECF No. 32.  Because Deqa has objected, the R&R must be reviewed de novo pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b)(3).  The Court has undertaken that de novo review and concludes that Magistrate Judge Schultz's analysis and conclusions are correct.

Under § 1231(a)(6), certain aliens subject to administratively final orders of removal "may be detained beyond the [90-day] removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6).  In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) includes "an implicit limitation" to avoid conflicting with the Fifth Amendment's Due Process Clause: "In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention."  533 U.S. 678, 689–90 (2001).  "Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably

2

necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority." *Id.* at 699. "In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700. If continued detention is unreasonable, "the alien's release may and should be conditioned on any of the various forms of supervised released that are appropriate in the circumstances." *Id.* at 700.

To aid lower federal courts in determining what constitutes "a period reasonably necessary" to effect an alien's removal, the Supreme Court recognized a "presumptively reasonable period of detention" of six months. *Id.* at 701; *see also Bah v. Cangemi*, 489 F. Supp. 2d 905, 916 (D. Minn. 2007) ("[T]he six-month period of presumptively reasonable detention established in *Zadvydas* consists of the 90-day removal period . . . plus an additional 90 days."). In cases such as this one, when a removable alien has been detained for longer than the presumptively reasonable period of six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Further, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

At issue here is the likelihood of Deqa's removal to Somalia in the reasonably foreseeable future. In general:

> Courts have found no significant likelihood of removal in five types of cases: (1) where the detainee is stateless and no country will accept [her]; (2) where the detainee's country of origin refuses to issue a travel document; (3) where there is no repatriation agreement between the detainee's native country and the United States; (4) where political conditions in the country of origin render removal virtually impossible; and (5) where a foreign country's delay in issuing travel documents is so extraordinarily long that the delay itself warrants an inference that the documents will likely never issue.

*Ahmed v. Brott*, No. 14-cv-5000 (DSD/BRT), 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015) (collecting cases), *report and recommendation adopted*, 2015 WL 1542155 (D. Minn. Apr. 7, 2015). "In other words, for there to be *no* significant likelihood of removal in the foreseeable future, there must be some indication that the government is either unwilling or, due to seemingly insurmountable barriers, incapable executing an alien's removal." *Id.*

The R&R finds that "Deqa has met her initial burden of providing good reason to believe there is no significant likelihood of her removal in the reasonably foreseeable future," because she provided evidence that "political conditions in [Somalia] render removal virtually impossible." R&R at 9 (citing *Ahmed*, 2015 WL 1542131, at *4). Specifically, the R&R notes that international flights to Somalia were suspended in response to the COVID-19 pandemic with no concrete indication of when the suspension was or will be lifted. *Id.* at 5, 10. And, "[a]s recently as May 28 . . . the United States Embassy in Somalia warned that a decision to pass on a charter flight for U.S. citizens leaving Mogadishu that day '[was], for all intents and purposes, a decision to shelter in place for the duration of the COVID-19 pandemic.'" *Id.* at 10. Evidence of these restrictions on travel to and from Somalia was enough for Deqa to meet her burden of showing that her removal to Somalia was not significantly likely to occur in the reasonably foreseeable future. *Id.*

4

Nonetheless, the R&R concludes that the Government successfully rebutted Deqa's evidence to show that her removal is likely in the reasonably foreseeable future. *Id.* at 11. In a June 9, 2020 supplemental declaration, Immigration and Customs Enforcement ("ICE") Deportation Officer William Robinson stated that Deqa's "travel document is currently being renewed," and "the Embassy of Somalia has started issuing travel documents again, additional travel document requests are being submitted, and a chartered removal is in the planning process for September 2020." Robinson Suppl. Decl. ¶¶ 5–6 [ECF No. 27]. Additionally, Officer Robinson declared that: "Attempts to remove [Deqa] via commercial means will be conducted first. If commercial means are not successful, she will be placed on the charter flight that is being scheduled." *Id.* ¶ 7. Based on Officer Robinson's supplemental declaration, the R&R found that "the Court can reasonably expect ICE to remove Deqa no later than the end of September," and that this was enough to show that her removal was significantly likely to occur in the reasonably foreseeable future. R&R at 13.

Deqa objects to that conclusion, arguing that the Government "failed to present *any* evidence that the flight ban will not prevent [Deqa]'s removal." Obj. at 6. While the Government did not submit evidence at that time showing that Somalia's international travel ban had been lifted, the Court agrees that "it is sufficient that Somalia appears willing to continue working with the United States to repatriate Somalian nationals despite any generally applicable suspension of air travel." R&R at 13. Accordingly, the Government has shown that it is neither unwilling nor incapable of removing Deqa to Somalia. *See Ahmed*, 2015 WL 1542131, at *4.

"To ensure that Deqa's removal is significantly likely to occur no later than September 2020," Magistrate Judge Schultz required the Government "to provide an update on Deqa's removal and the planned September charter flight." R&R at 15. The Government provided that update in a second supplemental declaration of Officer Robinson submitted on August 3, 2020, which further supports finding that Deqa's removal is significantly likely to occur no later than September. Second Robinson Suppl. Decl. [ECF No. 34]. In that update, Officer Robinson declared that: "On June 22, 2020, the Embassy of Somalia in Washington, D.C. issued a renewed travel document for [Deqa]. This travel document expires on December 23, 2020." *Id.* ¶ 4. Officer Robinson also declared that "Somalia does not have a ban on international travel for returning citizens." *Id.* ¶ 5. Additionally, Kenya— "the point from which ICE conducts departures to Somalia"—"lifted international travel restrictions on August 1, 2020." *Id.* ¶ 6. Perhaps most importantly, Officer Robinson stated: "[Deqa] is manifested on a chartered flight that is scheduled in mid-September. There are currently no travel restrictions on the scheduled charter flight. Efforts to remove [Deqa] via commercial flights before the scheduled charter will be made as well, if possible, through Kenya." *Id.* ¶ 7. This is sufficient to show that the Government is making progress toward Deqa's removal to Somalia and that her removal is significantly likely to occur in the reasonably foreseeable future. *Compare Ahmed*, 2015 WL 1542131, at *4 ("Where, as here, ICE has made diligent and reasonable efforts to obtain travel documents, the alien's native country ordinarily accepts repatriation, and that country is acting on an application for travel documents, most courts conclude that there is a significant likelihood of removal in the foreseeable future." (internal quotation marks omitted)), *and Jaiteh v. Gonzales*, No. 07-cv-

6

1727, 2008 WL 2097592, at *2–3 (D. Minn. Apr. 28, 2008) ("If travel documents are pending before a foreign government, and a consular official suggests that the documents are forthcoming, this Court cannot find *no* significant likelihood of removal."), *with Bah v. Cangemi*, 489 F. Supp. 2d 905, 923 (D. Minn. 2007) (granting habeas petition where government's only evidence of likelihood of removal "consist[ed] almost entirely of generalities and hypothetical statements," and the "only factual assertion related specifically to [Petitioner]'s case is a double negative: Liberia has *not* told ICE that it would *not* issue a travel document").

Because the Government has provided sufficient information to rebut Deqa's showing and, as a result, the Court cannot conclude that there is no significant likelihood of her removal in the reasonably foreseeable future, Deqa is not entitled to immediate release from detention under *Zadvydas*. But, because circumstances may change, and "what counts as the 'reasonably foreseeable future'" must shrink "as the period of prior postremoval confinement grows," *Zadvydas*, 533 U.S. at 701, Deqa's Petition will be denied without prejudice. Should the Government stall or otherwise fail in its effort to remove her, Deqa may renew her *Zadvydas* claim by filing a new habeas petition.

## ORDER

Therefore, based on all of the files, records, and proceedings in the above-captioned matter, **IT IS HEREBY ORDERED THAT**:

1. The Petitioner's Objections to the Report and Recommendation [ECF No. 32] are **OVERRULED**;

2. The Report and Recommendation [ECF No. 30] is **ACCEPTED**;

3.  The Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE**; and

4.  The Petitioner's Emergency Motion for Immediate Release [ECF No. 5] is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 21, 2020
s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court